**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Kevin J.R.M.,[1]

               Petitioner,

v.

Todd Blanche, Markwayne Mullin,
David J. Venturella, David Easterwood,
and Eric Tollefson,

               Respondents.

Case No. 26-CV-3122 (KMM/JFD)


**REPORT AND
RECOMMENDATION**

---

This matter is before the Court on Petitioner Kevin J.R.M's petition for a writ of

habeas corpus, filed pursuant to 28 U.S.C. § 2241. (Dkt. No. 1.) Petitioner, a citizen of

Honduras, has been detained by U.S. Immigration and Customs Enforcement ("ICE") since

April 7, 2026. He is currently detained at the Freeborn County Jail in Minnesota.

Petitioner asserts that his detention is unlawful for several reasons: (1) his detention

violates the Administrative Procedure Act ("APA") because he is a member of the Deferred

Action Class preliminarily certified in *Immigration Center for Women and Children v.*

*Noem*, No. 2:25-cv-9848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026)

(hereinafter "*ICWC*"), *appeal docketed*, No. 26-3961 (9th Cir. June 22, 2026)[2]; (2) ICE's

---

[1] This District has adopted a policy of using only the first name and last initials of
nongovernmental parties in immigration cases.

[2] The Deferred Action Class is comprised of "[a]ll individuals to whom USCIS has granted
deferred action based on a pending U or T visa petition and who, during the authorized

decision to detain him was arbitrary and capricious, in violation of the APA; (3) his detention violates due process; (4) ICE violated 8 C.F.R. § 236.1(c)(9) in revoking his release on recognizance; and (5) his arrest violated the Fourth Amendment. (Pet. ¶¶ 18–24.) Respondents oppose the petition. As set forth below, the Court recommends that the petition be granted and Petitioner be released.

## I.   Background

Petitioner is 20 years old and a citizen of Honduras. (Pet. ¶ 2.) He came to the United States with his father on or about May 2, 2019, when he was 13 years old. (Pet. ¶¶ 3, 28.) Petitioner was detained immediately upon his arrival and released on his own recognizance. (Pet. ¶ 3.) The Department of Homeland Security ("DHS") initiated removal proceedings against him by issuing a Form I-862, Notice to Appear, on May 5, 2019. (Trevino Decl. ¶ 5 & Ex. B, Dkt. Nos. 10, 10-2.) He has lived in Minnesota ever since his entry into the United States. (Pet. ¶ 4.)

In March 2023, Petitioner applied for a U-Visa and employment authorization. (Pet. ¶ 6.) In May 2024, United States Citizenship and Immigration Services ("USCIS") granted Petitioner's application for Bona Fide Determination ("BFD"), and Petitioner was issued a Class C14 Employment Authorization Document ("EAD") that is valid until October 10,

---

period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status." *ICWC*, 2026 WL 1455004, at *47.

2028. (Pet. ¶¶ 6–7.) Based on his BFD and his EAD, USCIS granted Petitioner deferred action.[3] (Pet. ¶ 7.)

Meanwhile, according to Respondents, an immigration judge ("IJ") "administratively closed Petitioner's removal proceedings" on October 26, 2023. (Trevino Decl. ¶ 6.) Respondents do not explain what that means or attach any supporting documentation to Deportation Officer M. Trevino's declaration.

In November 2025, Petitioner was convicted of "Cannabis Open Package— Owner/Driver of Motor Vehicle" and sentenced to 30 days confinement. (Trevino Decl. ¶ 7.)

On or about April 4, 2026, Petitioner was pulled over by a Montevideo Police Department officer and arrested for driving while impaired, possessing a pistol without a permit, and carrying a pistol while under the influence. (Pet. ¶ 11; Trevino Decl. ¶ 8.) ICE located a booking record for Petitioner at the Chippewa County Jail in Montevideo on April 5, 2026, and lodged a detainer. (Trevino Decl. ¶ 9 & Ex. A at 2.) Supervisory Detention and Deportation Officer ("SDDO") "Holien" issued a Form I-200 administrative warrant on April 5, 2026. (Trevino Decl. Ex. D.) On April 7, 2026, Deportation Officer Trevino served Petitioner with an I-200 administrative warrant at the Chippewa County Jail, placed Petitioner under arrest, and transported Petitioner to the Kandiyohi County Jail. (Trevino

---

[3] The relevant regulation provides that because of a statutory cap on the number of U-1 nonimmigrant visas that can be issued annually, "USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U–1 petitioners are on the waiting list." 8 C.F.R. § 214.14(d)(2). Petitioner was granted deferred action because he is himself a direct U-1 petitioner.

Decl. ¶ 10, Ex. A at 2, & Ex. D.) The basis for Petitioner's removal was given as section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") (noncitizen present without admission or parole), codified at 8 U.S.C. § 1182(a)(6)(A)(i). (Trevino Decl. Ex. A at 2.)

On May 18, 2026, an IJ found Petitioner "removable/inadmissible" based on his "admissions and concessions" and ordered him removed to Honduras. (Trevino Decl. ¶ 12 & Ex. F at 1.) The order reflects that Petitioner waived his right to appeal the IJ's order. (Trevino Decl. ¶ 12 & Ex. F at 2.) An I-205 Warrant of Removal was issued on May 27, 2026. (Trevino Decl. ¶ 13 & Ex. E.) Petitioner appealed the IJ's removal order on June 14, 2026, and the "appeal is pending." (Trevino Decl. ¶ 14 & Ex. G at 1.) Petitioner was transferred to the Freeborn County Jail on June 26, 2026.[4] (Trevino Decl. ¶ 15.)

## II.   Discussion

Pursuant to 28 U.S.C. § 2241, federal courts have jurisdiction to order the release of a person held in the custody of the United States "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "This authority includes the release of detained noncitizens . . . ." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025). Petitioner has the "burden to prove illegal detention by a preponderance of the evidence." *See Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

---

[4] Respondents' counsel stated in the response to the petition that counsel "was advised by ICE that USCIS is actively working to revoke Petitioner's deferred status on account of his criminal charges" and "that USCIS will issue an intent to deny (ITD) to Petitioner." (Resp'ts' Resp. at 4, Dkt. No. 9.) The record is bereft of evidentiary support for these assertions; Respondents did not file a declaration, exhibits, or any other evidence to support counsel's statements.

**A.      The Statutory Basis for Petitioner's Detention**

The parties disagree about whether Petitioner's order of removal is final and consequently about the statutory basis for his detention. Respondents claim the removal order is final because Petitioner waived his right to appeal, as reflected in the IJ's order. (Resp'ts' Resp. at 5.) Thus, according to Respondents, Petitioner is detained pursuant to 8 U.S.C. § 1231. Petitioner counters that the removal order is not final because he did not knowingly or voluntarily waive his right to appeal, and he filed an appeal with the Board of Immigration Appeals ("BIA"). (Pet'r's Reply at 2, Dkt. No. 11.) Petitioner asserts that he is detained pursuant to 8 U.S.C. § 1226(a).

As relevant here, an order of removal becomes administratively final "(a) Upon dismissal of an appeal by the Board of Immigration Appeals"; or "(b) Upon waiver of appeal by the [noncitizen]." 8 C.F.R. § 1241.1. The record at hand implicates both positions: Petitioner waived his right to appeal, but then he filed an appeal. The validity of the appeal waiver is a matter for the BIA to decide. *See Castro-Vargas v. Sessions*, 682 F. App'x 524, 525 (8th Cir. 2017) (finding that "the BIA had authority to determine whether the appeal waiver was valid") (citing *In re Patino*, 23 I. & N. Dec. 74, 76 (BIA 2001)); *Camick v. Sessions*, 891 F.3d 1101, 1108 (8th Cir. 2018) (explaining that a noncitizen "who concludes that the process was procedurally unfair will file a motion with the IJ or a timely appeal to the BIA alleging that the appeal waiver was not knowing or voluntary"). Unless and until the BIA finds that Petitioner's appeal waiver was invalid and dismisses the appeal, the order of removal is not administratively final. Thus, the statutory basis for Petitioner's detention is not 8 U.S.C. § 1231.

5

The next question is whether Petitioner is detained pursuant to 8 U.S.C. § 1225 or § 1226. Respondents argue, in the alternative to § 1231, that Petitioner is detained under § 1225 because he is in the United States without lawful admission, and under *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), he is an "alien seeking admission" under § 1225(b)(2)(A). As such, his detention is mandatory. Petitioner argues that he was arrested and detained pursuant to § 1226 because the Form I-200 administrative warrant invoked ICE's authority under that statute and ICE should be held to its representations. (Pet'r's Reply at 4.)[5] If § 1226(a) governs his detention, detention is discretionary, and Petitioner is entitled to a bond hearing.

The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Trevino Decl. Ex. D.) Section 236 of the INA is codified at 8 U.S.C. § 1226. The Court finds that the Form I-200 administrative warrant's reference to section 236 represented to Petitioner that his arrest was based on § 1226 and "that he was not subject to mandatory detention under § 1225(b)(2)." *Accord Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026); *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2–3 (D. Minn. May 13,

---

[5] Although the Court usually will not entertain arguments made for the first time in a reply brief, the Court does so here because the reply was the first opportunity Petitioner had to make arguments based on the declaration and exhibits submitted with Respondents' response, which Petitioner had not seen before filing the petition. In addition, the procedure for objections will allow Respondents to challenge any findings and recommendations that incorporate new arguments made in the reply.

6

2026) ("Because Respondents represented to Petitioner in this warrant that her arrest was based on § 1226(a), the Court holds Respondents to that representation and considers Petitioner subject to the discretionary detention framework of § 1226."). The Court will hold Respondents to their representation in the Form I-200 administrative warrant and will consider Petitioner's detention under the framework of § 1226. *Accord Hector J.A.S.*, 2026 WL 1243500, at *2; *Martha C.G.P.*, 2026 WL 1329577, at *2; *Yonatan P. v. Blanche*, No. 26-CV-2949 (JMB/EMB), 2026 WL 1842652, at *3 (D. Minn. June 26, 2026); *Souleimane C. v. Blanche*, No. 26-CV-2215 (LMP/JFD), 2026 WL 1180075, at *3 (D. Minn. Apr. 30, 2026). *But see Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026) (finding that the reference to § 1226 on the Form I-200 did not commit ICE to detaining the petitioner under § 1226). This Court agrees with *Hector J.A.S.*, *Martha C.G.P.*, *Yonatan P.*, and *Souleimane C.* and recommends holding Respondents to the representation made in the Form I-200 administrative warrant that Petitioner's arrest was pursuant to § 1226.

Consistent with this finding is the high likelihood that Petitioner was released on recognizance in 2019 pursuant to § 1226. Although Respondents did not provide Petitioner's Order of Release on Recognizance to the Court, they described and discussed a standard "Form I-220A" in their response. (Resp'ts' Resp. at 9.) Form I-220A is publicly available on ICE's website, and the Court takes judicial notice of it. The form states that release on recognizance is "[i]n accordance with section 236" of the INA—§ 1226, in other words. *See* ICE, Order of Release on Recognizance, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf (last visited July 16, 2026). If release was authorized under

7

§ 1226, revocation of that release would also fall under § 1226. Other courts have recognized that an order of release on recognizance "is a form of conditional parole from detention upon a charge of removability, authorized under section 1226." *Souleimane C.*, 2026 WL 1180075, at *2 (cleaned up) (citing *Ahmed M. v. Bondi*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *2 (D. Minn. Jan. 5, 2026)); *Sandhu v. Mullin*, No. 7:26-CV-5009, 2026 WL 1146643, at *3 (D. Neb. Apr. 28, 2026).

Because Petitioner is detained pursuant to § 1226(a), he is entitled to, at minimum, a bond hearing. The Court proceeds to Petitioner's other arguments to determine whether he should be detained at all.

### B.  The Effect of the Preliminary Injunction Issued in *ICWC*

Petitioner asserts that he is a member of the Deferred Action Class certified in *ICWC*, and his detention violates a preliminary injunction issued in that case. (Pet. ¶¶ 96, 103–04.) He does not argue that he should be released because his detention is in direct violation of the *ICWC* injunction[6]; rather, he argues that his detention was a final agency action taken "not in accordance with law" and thus violates the APA. (Pet. ¶¶ 100–104 (quoting 5 U.S.C. § 706(2)(A).) Respondents concede that Petitioner is nominally in the Deferred Action Class subject to the preliminary injunction in *ICWC* but contend that ICE

---

[6] Several courts have concluded that the non-final order issued in *ICWC* does not provide a direct basis for habeas relief in other federal districts. *E.g.*, *Ore-Falcon v. Wofford*, No. 1:26-CV-00181-WBS-EFB, 2026 WL 1871024, at *4 (E.D. Cal. June 29, 2026) (declining to grant preliminary injunction); *F.J.V.R. v. Moniz*, No. 26-CV-12525-FDS, 2026 WL 1751998, at *3 (D. Mass. June 18, 2026) ("It is not clear what effect, if any, that non-final order has in this proceeding, and whether this Court has the authority to enforce it."); *Rauda Choto v. Ladwig*, No. 26-CV-0322, 2026 WL 1652576, at *2 (W.D. La. June 8, 2026) (citing cases).

did not violate the injunction because ICE did not detain Petitioner under the policy challenged in that case.[7] (Resp'ts' Resp. at 7.)

Petitioner has not explained how a habeas petitioner can proceed under the APA to enforce preliminary injunctive relief granted by another federal district court. *Accord Vargas Cervantes v. Mullin,* No. 1:26-CV-04467-DC-SCR, 2026 WL 1907198, at *4 (E.D. Cal. July 2, 2026) (setting forth findings and recommendations of the assigned magistrate judge). Without that explanation, or some supporting legal authority, the Court cannot recommend granting habeas relief on the basis that Petitioner's detention violates the APA because of the preliminary injunction issued in *ICWC. See id.* Petitioner's recourse, if any, likely lies in the court that issued the injunction. *See id.*

### C.     ICE's Re-Detention of Petitioner: APA Claim

Petitioner argues that his re-detention was a final agency action that is judicially reviewable (Pet. ¶ 108) and that because it was carried out without any process it was arbitrary and capricious, in violation of the APA (Pet. ¶¶ 106, 109). Petitioner has failed to provide on-point legal authority applicable to this argument. Neither *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983), nor *Department of Homeland Security v. Regents of the University*

---

[7] Petitioner also argues that Respondents did not properly revoke his deferred action status (Pet. ¶ 117), but Respondents do not claim to have done so. Respondents' counsel stated in the response to the petition that counsel "was advised by ICE that USCIS is actively working to revoke Petitioner's deferred status on account of his criminal charges." (Resp'ts' Resp. at 4, Dkt. No. 9.) So while USCIS might be in the process of revoking Petitioner's status, all agree that Petitioner currently has that status.

*of California*, 591 U.S. 1 (2020), were decided in the habeas context or the immigration context. *Matter of Sugay*, 17 I. & N. Dec. 637, 1981 WL 158803 (BIA 1981), involved a bond redetermination hearing, and the noncitizen did not raise an APA claim. To the extent that *Sugay* stands for the proposition that DHS must show a material change in circumstances to justify re-detaining a noncitizen who has been released, *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018), neither *Sugay* nor *Saravia* involved an APA claim. Petitioner has not shown that ICE's decision to re-detain him violated the APA, and the Court will move on to his other arguments.

> **D.      Title 8 C.F.R. § 236.1(c)(9)**

Petitioner argues that Respondents violated 8 C.F.R. § 236.1(c)(9) in revoking his release because the government officials who purportedly did so were not authorized to do so and because ICE did not follow its own regulations, namely 8 C.F.R. § 236.1(c)(9). (Pet. ¶¶ 22, 114–16.) That regulation provides,

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained.

8 C.F.R. § 236.1(c)(9). "Agencies must adhere to their own regulations." *Emilio S.R.G. v. Mullin*, No. 26-CV-2189 (KMM/DLM), 2026 WL 1810416, at *2 (D. Minn. June 24, 2026) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954)).

10

Petitioner alleges that the government official who purportedly revoked his Order of Release on Recognizance was not one of the officials listed in the regulation. (Pet. ¶¶ 114–15.) In response, Respondents explain that SDDO Holien, who issued the Form I-200, was an "officer in charge," as contemplated by § 236.1(c)(9). (Resp'ts' Resp. at 11.) Respondents have provided no evidence to support that assertion, however, or that SDDO Holien had the authority to revoke Petitioner's Order of Release on Recognizance. Without such evidence, the Court cannot be sure Petitioner's release was properly revoked. *See Bryan A.Q.C. v. Lyons*, No. 26-CV-3165 (JRT/EMB), 2026 WL 1998719, at *2 (D. Minn. July 10, 2026).

Respondents also submit that the issuance of the Form I-200 *ipso facto* revoked Petitioner's release on recognizance. The Court disagrees. Although § 236.1(c)(9) confers great discretion on the government to revoke release, "that discretion must be exercised by *someone*." *Sandhu*, 2026 WL 1146643, at *4 (emphasis in *Sandhu*). There is no evidence, however, that SDDO Holien was even aware of the Order of Release on Recognizance, much less exercised discretion to revoke it. Indeed, the evidence indicates otherwise. Deportation Officer Trevino's declaration does not mention the Order of Release on Recognizance or an intention to revoke that order. Similarly, the Record of Deportable/Inadmissible Alien completed on April 8, 2026, does not mention the Order of Release on Recognizance; rather the "Immigration Record" field says "negative." (Trevino Decl. Ex. A.)

The Court concludes that ICE did not comply with § 236.1(c)(9) in taking Petitioner into custody. The remedy for unlawful detention is release. *Munaf v. Geren*, 553 U.S. 674,

693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. . . . The typical remedy for such detention is, of course, release."); *see Ger V. v. Mullin*, No. 26-CV-2543 (KMM/DTS), 2026 WL 1847044, at *4 (D. Minn. June 26, 2026) ("It is well established that when detention lacks a lawful predicate, release is an appropriate remedy.")

### E.    ICE's Re-Detention of Petitioner: Due Process Claim

Petitioner avers that ICE provided him with no process before re-detaining him, including no notice or opportunity to respond, no revocation of the order releasing him on recognizance, and no showing of a material change in circumstances. (Pet. ¶ 19.) Respondents counter that Petitioner received all the process to which he was due.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (cleaned up). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Id.* at 693. "[R]edetention of a person previously released, without formally revoking that order of release or following any procedures prior to making a decision that conflicts with an order of release, violates due process." *Dhillon v. Mullin*, No. 8:26-CV-229, 2026 WL 1587371, at *3 (D. Neb. June 3, 2026) (citing *Salazar v. Noem*, No. 0:26-cv-1040, 2026 WL 381889, at *1 (D. Minn. Feb. 11, 2026) (collecting cases); *Sandhu*, 2026 WL 1146643, at *4).

Courts frequently use the three-factor test enumerated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether a noncitizen's detention violates the Fifth Amendment. That test requires the Court to balance

> (1) "the private interest that will be affected by the official action[";] (2) "the risk of an erroneous deprivation of such interest through the procedures used" and "the probable value of additional safeguards[";] and (3) "the Government's interest and burdens that the additional or substitute procedural requirement would entail."

*Axel J.M.C. v. Stanski*, No. 26-CV-2281 (JRT/EMB), 2026 WL 1171344, at *3 (D. Minn. Apr. 29, 2026) (quoting *Mathews*, 424 U.S. at 335).

As an individual confined in a jail under conditions similar to those imposed on convicted individuals, "Petitioner's private interest here is of paramount importance." *Id.* at *4; *see Felipe S.P. v. Blanche*, No. 26-CV-2212 (NEB/DJF), 2026 WL 1911656, at *7 (D. Minn. July 2, 2026) (finding petitioner's "interest in being free from detention . . . fundamental and essential to his liberty"). The deprivation of a person's physical liberty is the quintessential infringement of a private interest. The first *Mathews* factor heavily favors Petitioner. *See Sandhu*, 2026 WL 1146643, at *3 (finding that petitioner released on his own recognizance had a liberty interest in his continued release).

Next, the Court finds there is a high degree of risk of an erroneous deprivation of Petitioner's liberty interest through the procedures ICE used. Petitioner was given no notice of a material change in circumstances or opportunity to respond, and his Order of Release on Recognizance was not formally revoked. Petitioner's unique status and circumstances are particularly relevant here. *See Sandhu*, 2026 WL 1146643, at *3. Key to the due-process analysis "is the fact he was initially detained but then conditionally paroled into

the United States." *See id.* When Petitioner entered the United States as a 13-year-old, he was released on his own recognizance. Although 8 C.F.R. § 236.1(c)(9) gives the government great discretion in revoking release, that discretion must be exercised properly. As set forth in Part II.D, however, it was not. Respondents have not shown that SDDO Holien knew about the Order of Release on Recognizance, had the authority to revoke it, or exercised any discretion to revoke it. Although Respondents now point to Petitioner's arrest in April 2026 and conviction in November 2025 as a material change in circumstances, there is no evidence that SDDO Holien knew about those circumstances when he issued the Form I-200 administrative warrant on April 5, 2006. The Record of Deportable/Inadmissible Alien that contains Petitioner's criminal history was not completed by Deportation Officer Trevino until April 8, 2026, three days later. (*See* Trevino Decl. Ex. A.)

Turning to the probable value of additional safeguards, providing notice and an opportunity to be heard is fundamental to due process. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). The Court acknowledges that "detention during removal proceedings is a 'constitutionally permissible part' of the removal process." *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (quoting *Demore v. Kim*, 538 U.S. 510 (2003)). "But the government's authority to detain noncitizens is not limitless and should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are

14

ongoing."[8] *Id.* It follows that, after a noncitizen has been released on his own recognizance, the government must show a material change in circumstances related to those goals before revoking release. *See Doh H. v. Blanche*, No. 26-CV-2413 (JMB/SGE), slip op. at 8 (D. Minn. May 6, 2026), Dkt. No. 8 (stating that "*Mathews* requires DHS officials invoking section 236.1(c)(9) to make at least a showing of material changed circumstance before revoking release"). Numerous courts have concluded the same. *See id.* (citing *Yohan A.-G. v. Warden*, No. 2:26-CV-0997 (LK), 2026 WL 1162705, at *5 (W.D. Wash. Apr. 29, 2026); *Rosado v. Figueroa*, No. No. 25-CV-2157 (CDB), 2025 WL 2337099, at *13 (D. Ariz. Aug. 11, 2025), *R. & R. adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez v. Sessions*, No. 18-CV-4189 (RWS), 2018 WL 2932726, at *11 (S.D.N.Y. June 12, 2018)). To revoke conditional release without process and no showing of changed circumstances "is fundamentally unfair." *See Sandhu*, 2026 WL 1146643, at *3 (quotation omitted). "Due process requires more." *Id.*

There is both a high risk of an erroneous deprivation of Petitioner's liberty interest through the procedures ICE used and a high probable value of additional safeguards. The second *Mathews* factor therefore also favors Petitioner.

As to the third *Mathews* factor, Respondents identify general, though valid, interests such as "a strong interest in the uniform administration of the immigration laws" and "ensuring that removals are effected efficiently and within the time allotted by statute." (Resp'ts' Resp. at 16.) They have not shown, however, that these interests would have been

---

[8] Presumably, when Petitioner was released on his own recognizance, the government found that neither of those goals would be served by his detention.

diminished by giving Petitioner notice and an opportunity to be heard before revoking his release and re-detaining him. Respondents also assert interests relating to the mandatory detention requirement of 8 U.S.C. § 1231, which does not apply here.

On balance, the Court finds that Petitioner's due process rights were violated. The proper remedy is release. *See Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1099500, at *3 (W.D. Okla. Apr. 22, 2026), *R. & R. adopted*, 2026 WL 1483557 (W.D. Okla. May 27, 2026) ("The proper remedy here is immediate release as a bond hearing would not adequately address Respondents' improper re-detention of Petitioner."); *Doh H.*, No. 26-CV-2413 (JMB/SGE), slip op. at 10.

### F.     The Fourth Amendment

Petitioner alleges that ICE arrested him without a warrant, which violated the Fourth Amendment. Respondents have shown, however, that Petitioner was taken into custody pursuant to a Form I-200 administrative warrant. A Form I-200 administrative warrant "is used to detain noncitizens when immigration authorities have issued a notice to appear and removal proceedings are either soon to be or are already ongoing." *Ahmed S. v. Blanche*, No. 26-CV-2265 (KMM/DLM), 2026 WL 1998718, at *5 (D. Minn. July 10, 2026).

With respect to the validity of the Form I-200 administrative warrant, Petitioner surmises that the biometric information used to confirm his identity was not obtained until he was in ICE custody (Pet. at 160), but Respondents point out that his biometric data would have been obtained when he was booked into the Chippewa County Jail (Resp'ts' Resp. at 18). Petitioner does not dispute that observation.

16

The other warrant-related arguments raised in the petition are based on the premise that no Form I-200 administrative warrant was issued. Given that faulty premise, the Court does not recommend that habeas relief be granted on Fourth Amendment grounds or lack of probable cause under 8 U.S.C. § 1357.

### G.    Abbreviated Timeline for Objections

The Court draws the parties' attention to the abbreviated timeline set forth in the Notice below for filing objections and responses to objections.

## III.    Recommendation

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Kevin J.R.M's petition for a writ of habeas corpus (Dkt. No. 1) be **GRANTED** and that Petitioner be released immediately.

Dated: July 17, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*." (Emphasis added.) **The Court modifies the deadline such that objections are due on or before July 24, 2026. Responses to objections are due on or before July 31, 2026.** All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).